UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIRECTV, Inc., a California corporation, | Case No. **03cv12340 GAO** |
| Plaintiff, | COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES, AND FOR INJUNCTIVE RELIEF |
| v. | |
| TONY PAPALE | |
| Defendant. | |

MAGISTRATE JUDGE _____

Plaintiff, DIRECTV, Inc., through its attorneys, alleges as follows:

## INTRODUCTION:

### DIRECTV AND THE SATELLITE TELEVISION BROADCASTING BUSINESS

1.  Plaintiff, DIRECTV, a California company, operates the United States' premier digital satellite entertainment service, delivering over 225 channels of digital entertainment and informational programming to homes and businesses equipped with specialized digital satellite system equipment. DIRECTV has invested more than $1.25 billion to develop its direct broadcast satellite system.

2.  DIRECTV delivers television programming to millions of subscribers in the United States. In order to receive and view DIRECTV's satellite signal, each subscriber must be equipped with digital satellite system hardware, which consists of a

satellite dish, an integrated receiver/decoder ("IRD") and an access card that is necessary to operate the IRD. Through this technology, DIRECTV offers programming including major cable networks, studio movies and special events offered on a pay-per-view basis, local network channels in select areas, and a variety of other sports and special interest programs and packages, some of which DIRECTV has the exclusive right to broadcast via satellite.

3. DIRECTV does not manufacture digital satellite system hardware. DIRECTV sells programming, most of which it purchases from program providers such as cable networks, motion picture distributors, sports leagues, event promoters, and other programming copyright holders. DIRECTV contracts and pays for the right to distribute the programming to its subscribers, and holds exclusive satellite distribution rights in certain of the programming. DIRECTV also creates its own original content programming, for which DIRECTV owns the copyright.

4. DIRECTV provides different levels of programming to its customers based on the particular subscription package that DIRECTV subscribers purchase. DIRECTV encrypts its satellite transmissions and employs conditional access technology to prevent unauthorized access to its television programming by non-subscribers. The conditional access technology relies in part on "access cards" that are provided to consumers as components of the digital satellite system equipment and which, upon activation by DIRECTV, decrypt DIRECTV's programming and permit the consumer to access and view it. The software code contained in the access cards protects DIRECTV's programming against unauthorized access.

5.  Each DIRECTV customer is required to obtain a DIRECTV access card and other system hardware (including a small satellite dish) and create an account with DIRECTV. Upon activation of the access card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV.

6.  Consumers who have purchased digital satellite system equipment can subscribe to various packages of DIRECTV programming, for which the subscriber pays a periodic fee, usually monthly. Subscribers can also order pay-per-view events and movies either by using an on-screen menu and a hand-held remote control device, or by calling DIRECTV and ordering the program over the telephone.

### DIRECTV'S SECURITY SYSTEM

7.  All programming distributed by DIRECTV is delivered to one or both of DIRECTV's broadcast centers in Castle Rock, Colorado, and Los Angeles, California. At the broadcast centers, DIRECTV digitizes and compresses the programming, and encrypts the signal that is sent to its subscribers to prevent receipt of the programming without authorization. DIRECTV then transmits the encrypted signal to multiple satellites located in orbit approximately 22,300 miles above the earth.

8.  The satellites relay the encrypted signal back to Earth, where it can be received by DIRECTV's subscribers equipped with digital satellite system dishes and IRDs. The satellite receiving dishes can be mounted on a rooftop, windowsill or deck railing at the subscriber's home or business. The signal is received by the dish and transmitted by wire to the IRD. The IRD (boxes that are approximately the size of a

VCR player) acts like a computer which processes the incoming signal using the credit card sized access card.

9. After a customer installs the dish, IRD, and access card at his or her home or business, the access card blocks access to DIRECTV programming until the customer purchases one or more programming packages from DIRECTV. When the customer subscribes to a package, DIRECTV electronically activates the subscriber's access card in accordance with that subscription. The access card then acts as a reprogrammable microprocessor and uses "smart card" technology to (a) control which DIRECTV programming the subscriber is permitted to view, and (b) capture and transmit to DIRECTV the subscriber's impulse pay-per-view information.

10. Because DIRECTV generates its revenues through sales of subscription packages, it must be able to condition access to programming on the purchase of legitimate subscriptions. Accordingly, DIRECTV devotes substantial resources to the continued development and improvement of its conditional access system.

11. DIRECTV's need to develop increasingly sophisticated security measures is driven by the actions of satellite television "pirates." Satellite pirates endeavor to circumvent DIRECTV's security measures to gain unlimited access to all DIRECTV programming, including pay-per-view events, without paying a fee. Because the access cards are the primary security mechanism relied on by DIRECTV, the modification of access cards using various hardware and software devices designed to disable the access cards' security is the primary focus of satellite piracy.

12. As part of its ongoing effort to prevent piracy, DIRECTV periodically updates its access cards to improve both functionality and security controls. DIRECTV's

most recent generation of access cards are commonly referred to as "P4" cards. Prior generations of access cards are commonly known as "H", "P2", "HU" or "P3" cards.

13. As part of its efforts to combat piracy, DIRECTV periodically develops and administers electronic countermeasures, which are commonly referred to in the satellite piracy community as "ECMs." ECMs involve sending a stream of data that targets access cards using known modified software code and disables those access cards.

14. In response to DIRECTV's ECMs, and in particular to a highly successful ECM known in the pirate community as "Black Sunday," satellite pirates have developed devices referred to as, among other things, bootloaders, dead processor boot boards, glitchers, HU loaders, emulators, and unloopers, that employ hardware and software in combination to restore pirate access cards' ability to illegally circumvent DIRECTV's encryption protection and view DIRECTV programming.

15. DIRECTV's ability to attract and retain subscriber revenues and goodwill, and distribution rights for copyrighted programming, is dependent upon maintaining and securing the integrity of its programming, technology and products, including the access cards and copyrighted programming, and in prohibiting unauthorized reception and use of its protected communications.

## PARTIES

16. On or about December 1, 2001, DIRECTV executd Writs of Seizure, with the assistance of the United States Marshals Service, upon The Computer Shanty, an Internet seller of Pirate Access Devices. Shanty's business enterprise focused on distributing satellite signal theft devices, primarily designed for the surreptitious

interception of satellite communications broadcast by DIRECTV, through the website Shanty.com.

The raid revealed information related to Shanty and its customers. DIRECTV obtained various business records evidencing the ongoing illegitimate enterprise, including orders, invoices, electronic communications, shipping documentation, purchase receipts, credit card receipts and customer lists. Each record confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's Satellite Programming.

Shanty's customers ordinarily placed orders over a website operated by Shanty, aptly named Shanty.com. Pertinently, the business records obtained in the raid evidence each Defendant's purchases of Pirate Access Devices from Shanty, and in reliance on those records and other information, and upon information and belief, DIRECTV brings this lawsuit against each named Defendant for the purchase, possession, importing, modification, manufacture, assembly and/or use of Pirate Access Devices.
Each Defendant's activities violate federal telecommunication and wiretapping laws and state statutory and common law. As a result of each Defendant's decisions to obtain one or more Pirate Access Devices and the detrimental impact that such activities have on the company, DIRECTV brings this action seeking damages and injunctive relief against each Defendant's continued possession and/or use of Pirate Access Devices.

17.    Plaintiff, DIRECTV, Inc., is a corporation duly incorporated under the laws of the State of California with its principal place of business at 2230 East Imperial Highway, El Segundo, California. DIRECTV has significant interests in maintaining and

securing the integrity of its satellite transmissions of television programming, and in prohibiting the unauthorized reception and use of the same.

18.   Defendant is currently a resident of this District and/or was a resident of this District when this cause of action arose. DIRECTV alleges that Defendant has purchased and used illegally modified DIRECTV Access Cards and other devices ("Pirate Access Devices") that are designed to permit viewing of DIRECTV's television programming without authorization by or payment to DIRECTV.

19.   Defendant, TONY PAPALE ("PAPALE"), is a resident of Boston, MA. Upon information and belief, PAPALE purchased one or more Pirate Access Devices from one or more pirate device dealers as described below. PAPALE placed each order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transactions:

   a.   On or about August 13, 2001, PAPALE purchased one (1) Ultimate and Shanty Blue PS2 Powered EMU with cables. from SHANTY. The order was shipped to PAPALE's address in Boston, MA.

20. On or about the dates referenced above, the Defendant actually did purchase and thereafter receive certain electronic devices.

21. Defendant manufactured, assembled, distributed, and/or sold one or more Pirate Access Devices, knowing or having reason to know that the design of such devices render them primarily useful for the purpose of surreptitious interception of DIRECTV's satellite transmissions of television programming,

7

and knowing or having reason to know that such devices, or any components thereof, had been sent through the mail or transported in interstate or foreign commerce. Furthermore, Defendant used the Pirate Access Device(s) to intentionally intercept, endeavor to intercept, or procure others to intercept DIRECTV's electronic communications withou t authorization.

22. At all times material hereto, Defendant possessed the requisite digital system hardware ("DSS Hardware"), including satellite dish, integrated receiver/decoder ("IRD"), and/or programming, required to use the illegally modified DIRECTV access card, through which Defendant actually and intentionally intercepted DIRECTV's encrypted satellite transmissions of television programming without authorization or payment to DIRECTV in violation of 47 U.S.C. § 605 and 18 U.S.C. §§ 2510-2521.

23. Defendant's actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521. DIRECTV brings this action to restrain these illegal activities against it.

## SUBJECT MATTER JURISDICTION

24. This action arises under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521.

25. This Court has original federal question jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331; the Communications Act of 1934, as amended, 47 U.S.C. § 605(e)(3)(a), and the Wiretap Act, 18 U.S.C. § 2520(a).

## VENUE

26. Venue is proper in this District under 28 U.S.C. § 1391(a) because the Defendant is subject to personal jurisdiction in this District by virtue of Defendant's residence in the District. Additionally, venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claim occurred in this District.

## COUNT I
## UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS IN VIOLATION 47 U.S.C. § 605(a)

27. Plaintiff DIRECTV repeats and re-alleges the allegations in Paragraphs 1 through 26 as if set forth fully herein.

28. Defendant has received DIRECTV's satellite transmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a).

29. Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

30. Defendant knew or should have known that receiving DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no

adequate remedy at law to redress any such continued violations. Unless restrained by this Court, Defendant will continue to violate 47 U.S.C. § 605(a).

## COUNT II
## UNAUTHORIZED INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF 18 U.S.C. § 2511(1)

31. Plaintiff DIRECTV repeats and re-alleges the allegations in Paragraphs 1 through 30 as if set forth fully herein.

32. Civil causes of action for violation(s) of 18 U.S.C. § 2511 are expressly authorized by 18 U.S.C. § 2520.

33. By using Pirate Access Devices for purposes of decryption and viewing of DIRECTV's satellite transmissions of television programming, Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. §2511(1)(a).

34. Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

35. Defendant knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such

continued violations. Unless restrained by this Court, Defendant will continue to violate 18 U.S.C. § 2511(1)(a).

## COUNT III

### ASSISTING IN THE UNAUTHORIZED USE/INTERCEPTION SIGNALS IN VIOLATION OF TITLE 47 U.S.C. § 605

36. DIRECTV alleges and incorporates by reference paragraphs 1 through 35 above.

37. The Defendant distributed one or more Pirate Access Devices to third parties knowing or having reason to know that the Pirate Access Devices are or were primarily of assistance in the unauthorized interception or reception of the Plaintiff's satellite television programming in violation of Title 47 U.S.C. § 605(e)(4) and Title 47 U.S.C. § 605(a).

38. DIRECTV is a person aggrieved by the Defendant's violations of the Title 47 U.S.C. § 605 and is authorized to bring this action pursuant to Title 47 U.S.C. § 605 (e)(3)(A).

39. The satellite transmissions that make up DIRECTV's signal include interstate radio communications that are protected by Title 47 U.S.C. § 605.

40. The Defendant distributed one or more Pirate Access Devices to third parties willfully and knowingly in violation of Title 47 U.S.C. § 605.

41. DIRECTV did not authorize or consent to the Defendant's distribution of Pirate Access Devices to third parties.

42. The Defendant's violations have injured DIRECTV's ability to generate revenue by depriving DIRECTV of payment for its programming.

## COUNT IV

### ASSEMBLY, MANUFACTURE AND/OR MODIFICATION OF DEVICES OR EQUIPMENT IN VIOLATION OF TITLE 47 U.S.C. § 605

43. DIRECTV alleges and incorporates by reference paragraphs 1 through 42 above.

44. The Defendant assembled, manufactured and/or modified existing equipment knowing or having reason to know that the device(s) thereby created were primarily of assistance in the unauthorized interception or reception of the Plaintiff's satellite television programming in violation of Title 47 U.S.C. § 605(e)(4) and Title 47 U.S.C. § 605(a).

45. DIRECTV is a person aggrieved by the Defendant's violations of the Title 47 U.S.C. § 605 and is authorized to bring this action pursuant to Title 47 U.S.C. § 605 (e)(3)(A).

46. The satellite transmissions that make up DIRECTV's signal include interstate radio communications that are protected by Title 47 U.S.C. § 605.

47. The Defendant assembled, manufactured or modified the Pirate Access Devices willfully and knowingly in violation of Title 47 U.S.C. § 605.

48. DIRECTV did not authorize or consent to the Defendant's assembly, manufacture or modification of the Pirate Access Devices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DIRECTV requests that this Court grant the following relief:

(1) Find the Defendant's conduct in purchasing, possessing and using Pirate Access Devices violates 47 U.S.C. § 605(a) and (e)(4), and 18 U.S.C. § 2511(1)(a), and further find that Defendant's violations were willful, malicious or for a tortious or illegal purpose;

(2) In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1) enjoin and restrain Defendant, and persons controlled directly and indirectly

by Defendant, from importing, possessing, or using Pirate Access Devices, and further order Defendant to surrender all Pirate Access Devices;

(3)  In the event of a default, an award of statutory damages of $10,000 for each Pirate Access Device purchased and used in violation of 47 U.S.C. § 605(a), and a further award of DIRECTV's reasonable attorneys' fees and costs in the amount of $850;

(4)  In the event of trial, an award of either (a) statutory damages in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(II) and 18 U.S.C. § 2520(c)(2) or (b) compensatory and punitive damages in accordance with 605(e)(3)(C)(i)(I), and 18 U.S.C. § 2520(c)(2); and DIRECTV's reasonable attorneys' fees and costs in accordance with 47 U.S.C. § 605(e)(3)(B)(iii) and 18 U.S.C. § 2520(b)(3).

(5).  Such additional relief as the Court deems just and equitable.

11/20/03
Date

John M. McLaughlin (BBO.: 556328)
MCLAUGHLIN SACKS, LLC
31 Trumbull Road
Northampton, MA 01060
(413) 586-0865

13